**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**STEPHEN L. LaFRANCE HOLDINGS, INC.,** *et al.*              **PLAINTIFFS**

**UNITED STATES OF AMERICA**                                          **INTERVENOR**

**v.**                                    **4:11CV00807-BRW**

**GARRET SORENSEN,** *et al.*                                         **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendant Garret Sorensen's Second Supplement to Rule 37 Motion (Doc. No. 22). Plaintiffs have responded.[1] For the reasons set out below, the Motion is GRANTED in part and DENIED in part.

Also pending is a Motion to Remand by Garret Sorensen (Doc. No. 7). The Government has responded,[2] and Defendant Katherine Sorensen has replied.[3] For the reasons set out below, the Motion is GRANTED.

I have determined that, because I am remanding the case to state court, I do not have contempt power,[4] but Rules 11 and 37 of the Federal Rules of Civil Procedure are still in play.

The evidence at the hearing held on November 28, 2011, cleared Mr. David Martin, one of the lawyers for Plaintiffs, of any impropriety.

---

[1]Doc. No. 33.

[2]Doc. No. 30.

[3]Doc. No. 61.

[4]*United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988) (civil contempt citation will not stand where court lacks subject matter jurisdiction).

## I.      BACKGROUND

### A.      2009 Indictment and Two Connected Civil Cases

On June 3, 2009, Defendants Garret Sorensen, Katherine Sorensen, and Shannon Walters (collectively "Defendants") were indicted in the United States District Court for the Eastern District of Arkansas for aiding and abetting one another in a scheme to defraud USA Drug of over $500,000.[5]

A little over a month after the indictment was handed down, Plaintiffs (corporations with ownership interests in USA Drug) filed a civil suit against these same Defendants in the Circuit Court of Pulaski County, Arkansas.[6]

The civil complaint repeats, nearly word for word, the factual allegations in the indictment.  As discovery progressed in the state civil case, Defendant Garret Sorensen filed a motion to compel the depositions of members of the LaFrance family who have ownership interests or executive positions in USA Drug.  Plaintiffs responded with a motion to quash, which appears to have been denied at a June 3, 2010 hearing.[7]  After it was clear that discovery could not be avoided, Plaintiffs moved to nonsuit, and Pulaski County Circuit Judge Ernest Sanders, Jr. dismissed the case without prejudice on June 16, 2010.

---

[5]*United States v. Garret Sorensen, et al.*, No. 4:09-CR-00163-BRW (E.D. Ark. June 3, 2009).  Doc. No. 1.  A superseding indictment was filed on August 3, 2010.  Doc. No. 47. Assistant United States Attorneys Angela Jegley and Patricia Harris represent the Government. Defendant Garret Sorensen is represented by Ted Boswell, Floyd Clardy, Matthew House, and Pat James; Defendant Katherine Sorensen is represented by Erin Cassinelli and Jack Lassiter; and Defendant Shannon Walters is represented by Charles Banks.

[6]Case No. 60CV-09-5080, Circuit Court of Pulaski County, Arkansas.  David Martin and Ryan Solomon, both of the Rose Law Firm, represent Plaintiffs.

[7]I have not seen a transcript of the June 3, 2010 proceeding.

Just under a year later,[8] Plaintiffs refiled the state civil case making the same allegations as before.  This time, the United States Attorney's Office ("Government") filed a motion to intervene in the state case, and moved to stay discovery, citing the ongoing federal criminal matter and the Federal Rules of Criminal Procedure as grounds for intervention.  As in the first civil case, Defendants filed a motion to compel responses to written discovery and depositions, and Plaintiffs filed a motion to quash the depositions of Jason LaFrance, Stephen L. LaFrance, and Stephen L. LaFrance, Jr.

Following a hearing, Pulaski County Circuit Judge Wendell Griffen allowed permissive intervention on grounds that the criminal case and the civil case "have common questions of fact or law . . . ."[9]  However, Judge Griffen denied the requests to quash and stay discovery, finding no prejudice to the Government.  He recognized that "Defendants are entitled to seek discovery of facts and information relating to the civil claims asserted against them."[10]

---

[8]June 6, 2011.  *Stephen L. LaFrance Holdings, Inc., et al. v. Garret Sorensen, et al.*, No. 60CV-11-2775, Circuit Court of Pulaski County, Arkansas.

[9]Doc. No. 2.  The hearing was held on September 9, 2011; Judge Griffen's order is dated September 21, 2011.  Following entry of the order, the Government filed a motion for a Rule 54(b) certificate for an interlocutory appeal to the Arkansas Supreme Court, on which Judge Griffen had not yet ruled when this case was removed to this Court.

[10]*Id.*  September 21, 2011 order in *Stephen L. LaFrance Holdings, Inc., et al. v. Garret Sorensen, et al.*, No. 60CV-11-2775, Circuit Court of Pulaski County, Arkansas.

On October 7, 2011, after it was evident that Plaintiffs would have to submit to Defendants' discovery requests, the Government removed the state civil case to federal court.[11] Six days later,[12] Defendants moved to remand the civil case to state court.[13]

The very next day (October 14, 2011), the Government sought an extension of time until Thursday, November 10, 2011 -- the day after the LaFrance depositions were to be completed -- to respond to Defendant's motion to remand.[14]  Defendant Garret Sorensen objected because they viewed the motion as an effort to delay the state-court ordered depositions.[15]

On October 14, 2011, I granted the requested extension, but directed that "[t]he depositions set for November 7, 8, and 9 should proceed as scheduled."[16]  Neither Plaintiffs nor the Government raised any issues, by motion or otherwise, for the next three weeks.

At 1:58 p.m. on Friday, November 4, 2011, Defendant Garret Sorensen filed a motion for leave to file a counterclaim.[17]  Mr. James, counsel for Garret Sorensen, admitted this was an effort to prevent Plaintiffs from avoiding the depositions by having their complaint dismissed.

---

[11]Assistant United States Attorney Angela Jegley filed the Government's Notice of Removal.  She directed the deputy clerk of the court to file the civil case directly into the docket of the pending criminal case.  On November 9, 2011, I directed that a separate civil case with a separate docket number be opened.  4:11-CV-00807-BRW.

[12]October 13, 2011.

[13]Doc. No. 7.

[14]Doc. No. 9.  The Government cited preparation for an unrelated upcoming trial as the reason for the extension.

[15]*Id.*

[16]Doc. No. 11.

[17]Doc. No. 14.

At 4:58 p.m. on Friday, November 4, 2011, Plaintiffs filed the expected motion to dismiss the civil case with prejudice.[18]   At 4:59 p.m., they filed a motion to quash depositions in the civil proceeding.[19]   At 5:26 p.m., Defendant Garret Sorensen responded to Plaintiffs' motions.[20]

The next morning, a Saturday, Mr. James emailed David Martin, one of the lawyers for Jason LaFrance, stating that he expected the depositions to commence as scheduled on Monday, November 7, 2011.  Mr. Martin responded by email at 10:24 p.m. on Sunday, November 6, 2011, that there was no longer a reason for the discovery and that "the deposit [?] will not present [?] tomorrow."[21]   Mr. James emailed Mr. Martin at 7:43 a.m. on Monday, the day of the deposition, that he would be at the Rose Firm soon, and planned to proceed with the scheduled deposition.

## B.        The November 7, 2011 Events

Around 8:30 a.m. on November 7, 2011, Mr. James had a letter hand delivered to my chambers informing me, for the first time, of the dispute.  A hand-delivered letter from Mr. Solomon arrived at my office shortly thereafter -- in which he requested a one-hour hearing at 1:00 p.m. (four hours after the deposition was scheduled to commence) to resolve the motions filed at the close of business the Friday before.

As scheduled, Mr. James and the court reporter arrived at the Rose Law Firm to commence Jason LaFrance's deposition at 9:00 a.m., Monday, November 7, 2011.  They were told that the deposition would not proceed and were asked to leave the premises.

---

[18]Doc. No. 15.

[19]Doc. No. 16.

[20]Doc. No. 17.

[21]Doc. No. 33-6.  These two words -- "deposit" and "present" -- were taken from the email of Plaintiffs' counsel.

After being informed by my office (by telephone) of the hand-delivered letters and deposition issues, I entered this order (at 10:36 a.m.):

> By Order of October 14, 2011, the depositions were [to continue] as scheduled. I have not rescinded that Order and I am at a complete loss as to why they did not proceed this morning as ordered.
>
> I hereby direct that these depositions commence immediately today as previously ordered.
>
> The telephone conference scheduled for today at 11:00 a.m. is moved until tomorrow, Tuesday, November 8, at 9:00 a.m. At that time I will attempt to resolve pending issues.
>
> I have been available by conference call Friday, Saturday, and Sunday if any party wanted to request a cancellation of depositions.
>
> Only this morning have I driven into an area that has very spotty cell phone coverage.[22]

Four conference calls followed that day.  During the first teleconference, at about 12:10 p.m., as I was driving through the Sandhills of nothern Nebraska where there is poor cell phone coverage, Mr. Solomon informed me that he had released Jason LaFrance, because he believed that filing a motion to quash automatically stayed the depositions.[23]  Mr. Solomon also informed me that he was unable to locate Mr. LaFrance.  I reminded the parties that I had previously ordered the deposition to proceed, and I directed Mr. Solomon and Mr. Martin to locate Mr. LaFrance and to get on with the deposition.

During the second telephone conference, at 1:09 p.m., I was informed that Mr. LaFrance had been located at his home and was on his way to the Rose Law Firm.

During the third teleconference, at around 1:47 p.m., I was told that Mr. LaFrance would not stand for his deposition at the Rose Firm, because his pregnant wife was on doctor-ordered

---

[22]Doc. No. 18.

[23]Telephone Conference Tr. 6.

bed rest and there was no one to watch their one-year-old child.  Mr. Solomon asked that the deposition be moved to the next day.  I directed that a babysitter be located, and that the deposition commence at Mr. LaFrance's house -- in the LaFrance's garage if necessary -- so that Mr. LaFrance could be near his wife, who was purportedly bedridden.

At 2:56 p.m., I was called again -- this time because the LaFrance's crying one-year-old child was sitting on Mr. Solomon's lap at the deposition.  When I asked why a babysitter was not caring for the child as I had directed, Mr. Solomon stated: "We were unable to make arrangements in such a short period of time.  As we told you, the baby is here with us.  We're ready to go on and conduct it as the Court ordered."[24]  Mr. Solomon then reminded me, in a scolding tone, that he had warned that a child would be present at the deposition, and that this, indeed, had come to pass.  Once more, I ordered the deposition to continue, without the child in attendance.

My November 7, 2011 letter to Plaintiffs' counsel (filed at 4:45 p.m.) summarized the salient events.[25]  That letter reads:

Dear Mr. Solomon:

This is one last attempt at a word to the wise.

First, a Motion to Dismiss this case and a Motion to Quash Deposition Notices were filed late Friday afternoon after it was too late for the Court to get notice and take action.

Then, Plaintiff's counsel cancelled a Notice of Deposition and released a subpoenaed witness without permission of the Court.

When I ordered that deposition to proceed, the [deponent], an employee of Plaintiff, apparently disappeared for a while.

---

[24]*Id.* at 24.

[25]Doc. No. 19.

When the deponent was located and finally appeared at the office of Plaintiff's counsel, illness of Plaintiff's wife was pled; whereupon, I rescheduled the deposition for Plaintiff's home and asked that Plaintiff's counsel get a nurse to babysit the one-year-old child.

No nurse or other babysitter was secured and I received another call from Defendants' counsel because Plaintiff's counsel was holding the one-year-old child at the deposition table which, of course, was disruptive.

I received another call and Plaintiff's counsel was highly reluctant to correct this unfortunate situation (his co-counsel, from his firm, apparently did not appear at the home for the deposition – for a reason or reasons unclear to the Court since he had been involved in the earlier conference calls).

Rather than correct the situation by having a nurse available or a babysitter, Plaintiff's counsel continued to argue, and criticized the Court for not postponing the deposition.

It appears [for] all the world like a stall on the part of Plaintiff's counsel; and so that he will be fully advised in the premises, he is advised that I am [perilously] close to entering a Show Cause Order to set a hearing so he may show cause why he should not be held in contempt.

As stated, this is one last attempt to send a word to the wise, which, thus far, I have been unable to do.[26]

## C.    The Show-Cause Hearing

During a November 10, 2011 hearing, I ordered Messrs. Martin, Solomon, and LaFrance to show cause why they should not be held in contempt of court -- as well as why Rule 11 and Rule 37 sanctions should not be imposed on Mr. LaFrance, Plaintiffs' counsel, and the Government -- in connection with the recited shenanigans.[27]  The show-cause hearing was set for November 28, 2011.  The following people testified at the November hearing: Messrs. Martin, Solomon, and LaFrance; Assistant United States Attorneys Jegley and Harris; Mr. James; the court reporter and videographer present at Mr. LaFrance's deposition; and the deputy clerk of the

---

[26]*Id.*

[27]Doc. No. 34.

court who accepted Assistant United States Attorney Jegley's removal papers.  Additionally, I

questioned United States Attorney Chris Thyer.

II.     DISCUSSION

    A.     **Plaintiffs and Rule 37**

Under Rule 37 of the Federal Rules of Civil Procedure, a court may impose sanctions and

order reasonable fees and expenses paid when a party or a party's officer fails to obey a

discovery order or fails to appear for a deposition.

Plaintiffs contend that their attempt to avoid the LaFrance depositions was neither a

violation of any court order nor the Federal Rules of Civil Procedure, and that sanctions would

be improper.  They give five arguments for their behavior: (1) Rule 26 voided the state court

order; (2) the eleventh-hour filing of the motion to dismiss and the motion to quash was not

planned, but resulted from computer problems; (3) there was no need for discovery because of

the pending motion to dismiss; (4) the motion to quash automatically stayed the scheduled

depositions; and (5) because Mr. LaFrance ultimately was deposed, sanctions are not

appropriate.

      1.     **Violations of Court Orders and the Federal Rules of Civil Procedure**

        a.     **Federal Rule of Civil Procedure 26**

Plaintiffs first argue that they were not required to submit to the discovery ordered by

Judge Griffen because the parties had not yet conferred as required by Federal Rule of Civil

Procedure 26(f).[28]  They obviously ignored other sections of Rule 26, especially Rule 26(d)(1),

which provides that when there is a court order directing discovery, a party may have discovery

---

[28]Doc. No. 33.

before a Rule 26(f) conference.[29]  Further, under 28 U.S.C. § 1450, a state court order remains in

effect after removal until modified by the federal district court.[30]  There is no conflict between

§ 1450 and Rule 26, and there is no exception in § 1450 to support Plaintiffs' strained position.

Nor does the case cited by Plaintiffs[31] support their argument.  Clearly Judge Griffen's order

remained in effect after removal;[32] and even if it did not, Plaintiffs' argument ignores my order

directing the depositions to "proceed as scheduled."[33]

### b.      Last-Minute Filing

While Plaintiffs contend that the last-minute filing of their motion to quash and motion to

dismiss was entirely unintentional and that computer problems are to blame,[34] testimony at the

November 28 hearing showed that Plaintiffs knew well in advance of the deposition date that

they intended to dismiss the case -- and not proceed with the scheduled depositions.

Mr. LaFrance testified that he was released from the November 7, 2011 deposition some time the

week before the 7th -- despite the two court orders directing that the depositions proceed.

Mr. Solomon stated that he did not know on which day Mr. LaFrance's deposition was

scheduled, and that he had not prepared for the deposition.  He added, after a pause, that he was

---

[29]Federal Rule of Civil Procedure 26(d)(1) reads: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . by court order."

[30]28 U.S.C. § 1450.

[31]*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974).  This case dealt with a state court temporary restraining order and addressed applicable time limits under Federal Rule of Civil Procedure 65 in conjunction with 28 U.S.C. § 1450.

[32]28 U.S.C. § 1450.

[33]Doc. No. 11.

[34]Doc. No. 42.  Plaintiffs point out that as "early" as 11:04 a.m. on November 4, 2011, they were in the process of preparing these motions to be filed.

planning to prepare the week of the deposition.  This is puzzling since the deposition was scheduled to start on Monday morning of that week.

Mr. LaFrance admitted that he knew a week to ten days before the deposition that his counsel intended to file a motion to dismiss, and Mr. Solomon testified that he had the authority to dismiss this case on the afternoon of Tuesday, November 1, 2011.

Still, Plaintiffs never asked for any relief from this Court in connection with the subpoenaed -- and twice ordered -- deposition until 4:59 p.m., Friday, November 4, 2011 -- three weeks after I had ordered the depositions to go forward.  In other words, Plaintiffs waited until the last minutes of the last working day before the court-ordered depositions were to commence to file the motion to quash.

### c.      Discovery No Longer Needed

Plaintiffs also argue that they have not violated Federal Rule of Civil Procedure 37 because their last-minute motion to dismiss cancelled the need for discovery.

In their motion to quash, Plaintiffs cited no law, but rather asserted that the need to gather evidence was moot in light of the motion to dismiss the case with prejudice.[35]  Plaintiffs' counsel, without authority other than his own erroneous belief (if indeed he had such a belief), released the deponent and assured him that the deposition would not take place.  Again, Plaintiffs' position ignores the Federal Rules of Civil Procedure.  Under Rule 41(a)(2), a motion to dismiss does <u>not</u> automatically terminate a case.[36]  "It is axiomatic that a dismissal pursuant to Rule 41(a)(2) is not one of right but is rather a matter for the discretion of the trial court."[37]

---

[35]Doc. No. 16.

[36]Fed. R. Civ. P. 41.

[37]*United States v. Gunc*, 435 F.2d 465, 467 (8th Cir. 1970).  Further, since there is a pending motion to remand by Defendant, a pending motion for leave to file counterclaim by

Plaintiffs' position also ignores the fact that there was (and still is) a pending motion to file a counterclaim by Defendant Sorensen.  Had I granted the motion, the discovery sought by Mr. Sorensen might well have been appropriate.

### d.    Effect of a Motion to Quash

As noted above, Plaintiffs contend that they have not violated the Federal Rules of Civil Procedure because, when they filed the last-minute motion to quash, the deposition was automatically stayed.[38]  According to Plaintiffs, when a motion to quash a deposition is filed, a party's failure to comply with a subpoena is not actionable absent a court order.[39]  Further, Plaintiffs contend that the burden was on Defendants to contact the Court once the motions were filed.  These arguments are without merit.

As to Plaintiffs' first argument, the filing of a motion to quash does not automatically stay a deposition.  "The mere act of filing a motion . . . does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance."[40]  For

---

Defendant, and a pending motion to dismiss by Plaintiffs, the issue of subject-matter jurisdiction should be resolved first. See *Harden v. Field Mem. Cmty. Hosp.*, 265 Fed. Appx. 405, 408 (5th Cir. 2008) (citing *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc*., 479 F.3d 1330, 1342 (Fed. Cir. 2007)).

[38]Doc. No. 33.

[39]*Id.* (citing *Palmer v. Ellsworth*, No. 93-35406, 1993 U.S. App. Lexis 31933 (9th Cir. Nov. 17, 1993)). The deposition in *Palmer* was under subpoena, but not court ordered.  So, this case is not on point.

[40]*Barnes v. Madison*, 79 Fed. Appx. 691, 707 (5th Cir. 2003).  See also *Batt v. Kimberly-Clark Corp*., 438 F. Supp. 2d 1315, 1317-18 (N.D. Okla. 2006) (motion to quash does not automatically stay a deposition);  *Sutherland v. Mesa Air Group, Inc*., No. 98-10061-CIV2003, 2003 WL 21402549, at *5 and n.10 (S.D. Fla. June 6, 2003) (The filing of a motion for protective order alone would not have relieved counsel of obligation to attend the depositions; the obligation to comply dissipates only when court grants the motion.); *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979) (The court's inaction on plaintiff's motion for a protective order to postpone the taking of his deposition did not relieve plaintiff of the duty to appear for deposition); *Goodwin v. City of Boston*, 118 F.R.D. 297, 298 (D. Mass. 1988) (Filing a motion to

example, in a case where the plaintiff/deponent filed a motion to quash on the Friday before her Monday deposition, and then failed to appear for her deposition, sanctions were imposed by the court.  The appellate court noted that "[g]iven the timing, [the plaintiff] could hardly have expected in good faith to receive a court order excusing her attendance" and affirmed the lower court's imposing of sanctions.[41]

Contrary to Plaintiffs' assertions, the burden is on the movant to obtain a ruling on a motion to quash before cancelling a deposition.[42]  Here, Plaintiffs made no attempt to contact my office on Friday or over the weekend (or before) about a discovery dispute that was obviously ripe (or over-ripe);[43] instead, Plaintiffs' lawyers took it upon themselves to cancel the deposition without authority.

Plaintiffs' second argument -- that the failure to comply with a subpoena is not actionable absent a court order -- is particularly vexing.  There <u>were</u> court orders in effect directing the depositions to proceed when Plaintiffs filed their motion to quash, then Mr. LaFrance failed to appear for the Monday deposition.  I note once again that there were <u>two</u> court orders.[44]

---

quash does not automatically stay deposition.  "[I]t is incumbent on counsel for movant to file a motion to stay the deposition until the Court acts on motion to quash . . . <u>and</u> to alert the [court] to the need for immediate action . . . .") (emphasis added).

[41]*Madison*, 79 Fed. Appx. at 707.

[42]*Goodwin*, 118 F.R.D. at 298.

[43]A letter attached to every final scheduling order in each civil case on my docket reads, in part: "Before filing a discovery motion, please attempt to place a conference call to me.  These calls will be given a priority, especially those made during a deposition."

[44]Judge Griffen's order in the state case denying the earlier motion to quash, and my order in the federal case that the depositions were to proceed as scheduled.

### e.       Sanctions are Proper Under Rule 37

Plaintiffs also assert that they cannot be subject to Rule 37 sanctions, because Mr. LaFrance eventually was deposed on November 7, 2011.  Relying on *Fox v. Studebaker-Worthington, Inc.*,[45] Plaintiffs argue that sanctions are warranted only when there is a total failure to appear for a deposition.  Plaintiffs again misread the law.

In *Fox*, the Eighth Circuit concluded that the punishment should fit the crime.  The court reversed Rule 37 sanctions against the plaintiff because the plaintiff had complied with many of the defendant's discovery requests.  *Fox* did not hold that only a complete failure to appear at a deposition warrants sanctions.  Notably, in a case cited in *Fox*,[46] the appellate court found that dismissal for appearing late at a deposition was too severe, but held that the judgment for costs in taking the deposition was proper.[47]

In considering the history of this case, and after reviewing the behavior of Messrs. Solomon and LaFrance leading up to and during the deposition, I am persuaded that sanctions against them should be considered.

### I.       Recap – History of Avoiding Discovery

Plaintiffs nonsuited their first civil case immediately after their motion to quash depositions was denied.  A year later they refiled the case, but again tried to evade discovery.  Only <u>this</u> time, the Government intervened and sought to stay discovery.  Again, the court -- a different state judge this time -- rejected Plaintiffs' (and the Government's) attempts to avoid

---

[45]516 F.2d 989 (8th Cir. 1975).

[46]*First National Bank v. Langley-Howard*, 391 F.2d 207 (3d Cir. 1968).

[47]*Id*. at 208.

discovery and ordered discovery to proceed.  Unhappy with the result, the Intervenor (the Government) improperly removed the case to federal court.

### ii.      Behavior During the Deposition

### aa.      Moving to the Garage

During the November 7, 2011 telephone conferences (and subsequent pleadings) Plaintiffs represented that Ms. LaFrance, whose delivery date is in January and who has had a complicated pregnancy, was on doctor-ordered bed rest.  Sympathetic to this issue, I directed that the deposition be conducted at the LaFrance home so that Mr. LaFrance could be close to his ailing wife.  I also suggested that the deposition take place in the LaFrance's garage, so that the deposition would not disturb Ms. LaFrance. (I had no reason to know that Mr. LaFrance had a sprawling house, a separate guest house, and a pool house -- or else I would have suggested one of the other venues in lieu of the garage.)

The only reason the deposition was moved to the LaFrance home (and garage) was the representation that Ms. LaFrance was not well -- which, as it turned out, these representations were exaggerated.  Although Mr. LaFrance testified that his wife was very ill on November 7, he admitted that she was not on doctor-ordered bed rest and that he was not required to be by her side.  He also revealed that: (1) the day before the deposition, he and his wife had traveled about 200 miles from Fayetteville to Little Rock after attending a Razorback football game on Saturday night; (2) there was a family photo session at the house the morning of his scheduled deposition; (3) on that day, the housekeeper watched the LaFrance's one-year-old son while

Mr. and Ms. LaFrance had lunch at a new upscale hamburger establishment ten miles from their home.  (Ms. LaFrance apparently was well enough that day to lunch on a hamburger and a milk shake, according to testimony at the hearing.)

Ms. LaFrance is in no way faulted in this order; she is not a party and there is no evidence that she participated in any representation or misrepresentation.

Mr. Solomon testified about his close, personal friendship with Mr. LaFrance.  In connection with his representation of Ms. LaFrance's condition on November 7, Mr. Solomon said that he could tell from Mr. LaFrance's face that something was wrong and inferred that Mr. LaFrance was signaling that his wife was on doctor-ordered bed rest.  Quite an inference.

Mr. LaFrance admitted that his counsels' assertions, during the telephone conference and in subsequent pleadings, about his wife's condition on November 7, 2011 were not accurate.

### bb.    Mr. LaFrance was AWOL

When I ordered, again, at 10:36 a.m. on November 7, 2011, that Jason LaFrance's deposition commence immediately, Mr. LaFrance, mysteriously, was nowhere to be found.  However, he was in contact with his counsel at 8:25 a.m., 9:03 a.m., 9:57 a.m., and 10:24 a.m. that same morning.

According to Mr. LaFrance, he went to work later than usual that Monday morning because of family photos taken at his house.  After receiving a call from Ms. LaFrance about her health, Mr. LaFrance rushed away from his office to meet her.  In his haste, he left his cell phone at the office, which resulted in his counsel being unable to reach him, although Mr. LaFrance's home is a ten-minute drive from the Rose Law Firm.  Mr. Solomon knew Ms. LaFrance's cell phone number, but did not call it.  The lost was found at home around 12:30 p.m.

### cc.    No Childcare

In the telephone conferences, Mr. Solomon repeatedly argued that the LaFrance's child needed to be looked after, and that there were no childcare options available to them.  He also asked to continue the deposition.  Strongly suspecting that this was yet another stall tactic, I directed that a sitter be located.  Mr. Solomon and Mr. LaFrance later contended that this had

proven impossible on such short notice.  However, at the show cause hearing, it was revealed that the housekeeper had watched the child all morning, and that the child often attends a daycare.  In fact, the child went to the daycare center the two days after the deposition.

I still question why neither the housekeeper nor the daycare center were considered as alternatives (or mentioned to me during the telephone conferences).

I am not impressed with Mr. LaFrance's contention that there was no way to avoid having the one-year-old child at the deposition, and that Ms. LaFrance was in no condition to care for their son.  In other words, I have grave doubts about the unavailability of child care, as well as the severity of Ms. LaFrance's condition on November 7.

### 2.    Findings of Fact and Conclusions of Law

It is undisputed that there were two orders requiring Jason LaFrance to attend a deposition at 9:00 a.m., Monday, November 7, 2011.  After reviewing all of the filings in this case, hearing the live testimony, and considering Mr. Solomon's actions on the day of the deposition, I find that Mr. Solomon willfully, consciously, and intentionally violated the orders directing that the deposition proceed as scheduled.  I find that the late-hour filing of the motions to quash and to dismiss was intentional and was a bad-faith attempt to avoid discovery.  The last minute filing along with the lack of <u>any</u> effort by Mr. Solomon to contact my office makes it clear that       Mr. Solomon was playing games with the civil rules and with opposing counsel. Neither Plaintiffs nor their counsel ever intended to pursue the civil case if it meant they would be subject to discovery before the criminal case concluded.

Furthermore, the multiple distractions at the deposition (objections, frequent breaks, *etc.*) rendered the deposition ineffective.[48]  Considering the evidence as a whole, including the actions

---

[48]Each side asserts that the other jaywalked during the deposition.  It is undisputed, though, that at some point, Mr. James was not permitted to use the restroom inside the

of Mr. LaFrance and Mr. Solomon, I am convinced beyond peradventure that Plaintiffs were

willing "to do the necessary" to avoid discovery -- even if that meant flouting court orders.  This

is all the more troubling since Plaintiffs initiated the civil case, choosing thereby to subject

themselves to the discovery that is a standard part of any civil case.

There is no justification for the actions of Mr. Solomon or Mr. LaFrance.  Mr. Solomon's

conduct is a classic case of a lawyer setting professionalism aside and posturing for a longtime

friend and valued client.

This case calls to mind words from an order entered many years ago by the late Duross

Fitzpatrick, United States District Judge for the Middle District of Georgia:

> If all courtesy, goodwill and decency should finally be bled out of the practice of law
> it will be a sad and bitter calling that remains; I cannot imagine a more unpleasant
> way to earn a living than to be a lawyer in a profession devoid of any semblance of
> kindness, courtesy, or humanity.[49]

I find prejudice to Defendant Garret Sorensen in that he was prevented from obtaining

proper discovery in the civil case, which, as of this date, is still pending.

Based on the clear and convincing evidence, I find that Mr. Solomon intentionally

violated Federal Rules of Civil Procedure 37(b) and 37(d).  Accordingly, he is directed to pay

Defendant Garret Sorensen's reasonable costs and attorneys' fees[50] related to: (1) the deposition

---

LaFrance's house, and had to leave the deposition to find a restroom elsewhere.  One of
Mr. LaFrance's excuses for this was that he did not want his wife and child disturbed in the
evening hours.  However, the court reporter was allowed to use the restroom at all times, so, I am
not convinced.  Other distractions included the conditions in the garage, frequent breaks, and
Mr. Solomon's repeated objections, which were often made without basis.  This essentially was
a deposition in name only.

[49]*Isaac Williams v. General Motors Corp.*, 158 F.R.D. 510, 512 (M.D. Ga. 1993).

[50]Rule 37 sanctions are allowed even when a court lacks jurisdiction.  *Willy v. Coastal
Corp.*, 503 U.S. 131 (1992); *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996);
*In re Exxon Valdez*, 102 F.3d 429, 431 (9th Cir. 1996).  Beyond Rule 37, the court has inherent
powers, among which is the power to sanction.  See *United States v. Hudson & Goodwin*, 11

of Mr. LaFrance; (2) the motion for sanctions and fees related to the November 7, 2011

deposition; and (3) the November 28, 2011 show cause hearing.  Mr. Sorensen's counsel is

directed to file an accounting of all fees and costs related to the above items by 5:00 p.m.,

Friday, January 6, 2012.  Mr. Solomon's response must be filed by 5:00 p.m., Friday, January

13, 2012.

I also believe that Jason LaFrance violated Federal Rule of Civil Procedure 37(d), and

that he never had any intention of participating in the deposition.  While his lack of civility can

hardly be admired, he appears to have acted under the encouragement of Mr. Solomon; therefore

I will not impose sanctions for his poor manners.

### B.      Improper Removal -- and Remand[51]

The Government removed this case under the federal officer removal statute,

28 U.S.C. § 1442(a)(1).[52]  Removal under this statute is proper only when the removing party:

---

U.S. 32 (1812); *Roadway Express, Inv. v. Piper*, 447 U.S. 752 (1980).  Yet, when an individual rule addresses a specific problem, it may be improper "to invoke one when another directly applies." *Chambers v. NASCO, Inc*., 501 U.S. 32, 49 n.14 (1991).  Because Rule 37 addresses violations of discovery orders, I am sanctioning Mr. Solomon under the provisions of that Rule. In the alternative, the sanctions are imposed under this Court's inherent authority.  See *Perkins v. General Motors Corp*., 965 F.2d 597 (8th Cir. 1992); *Ray v. Eyster*, 132 F.3d 152 (3d Cir. 1997).

[51]While Defendant Sorensen's brief of November 22, 2011 (Doc. No. 54) might be deemed a wee bit strident by a detached observer, it is squarely on point in rebutting the Government's central arguments.

[52]28 U.S.C. § 1442(a)(1) reads:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right title or authority claimed under any Act of Congress for the apprehension of punishment of criminals or the collection of the revenue.

(1) is an officer or agent of the United States or is acting under the direction of an officer of the United States; and (2) raises a colorable federal defense to the plaintiff's claims; and (3) demonstrates "a causal connection between what the officer has done under asserted official authority and the state prosecution."[53]  These requirements are not present here.

After ample time to reflect, the Government continues to rely on *United States v. Todd*[54] to support its decision to remove this case to federal court.  This case is inapposite, and clearly so.[55]  In *Todd*, the Arkansas State Police were "involved in a joint investigation with certain federal agencies,"[56] and the federal Freedom of Information Act ("FOIA") was in play.  The Eighth Circuit upheld the Government's removal based on the involvement of a federal agency and the federal FOIA.  However, *Todd* is silent as to the Federal Rules of Criminal Procedure that were cited in the Government's notice of removal to the district court.[57]  The district court noted that: "[p]erhaps the action should have been docketed as a new civil action, with the

---

[53]*Mesa v. California*, 489 U.S. 121, 131 (1989) (quoting *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926)).

[54]245 F.3d 691 (8th Cir. 2001).

[55]This point holds true as to the other case cited by the Government: *United States v. David Jones,* No. 4:98-CR-00116-JMM (E.D. Ark.).  Both *Todd* and *Jones* involved federal Freedom of Information Act issues -- both of which are wholly lacking here.

[56]Doc. No. 368, *United States v. Todd*, No. 4:99-CR-00061-JMM (E.D. Ark. Dec. 29, 1999 ).  The order in *Todd* also discusses the local rules relevant to the filing of a new civil case. The order notes that the normal procedure would be compliance with Local Rule 40.1, which provides for the random assignment of cases, followed by the filing of a notice of related case. The Eighth Circuit found no error where the district court judge decided to keep the case on his docket for judicial efficiency, as I did here.

[57]Doc. No. 335, *United States v. Todd*, No. 4:99-CR-00061-JMM (E.D. Ark. Dec. 16, 1999) ("[T]his is an action against an agency of the United States of America in its official capacity for an act under the color of such office and under the authority of the federal Freedom of Information Act, 5 U.S.C. § 522(b)(7), and Federal Rules of Criminal Procedure, Rule 16, and is thus removable pursuant to Section 1442(a)(1) of Title 28, United States Code.").

United States filing a motion to consolidate."[58]  The Eighth Circuit held that the filing of the removed civil case in the pending criminal case was "not jurisdictional, even though we suppose that its violation might, in an appropriate case, require a remand to the district court for reassignment of the case."[59]

Our Local Rule 40.1 provides, in part:

(a) All civil and criminal actions and proceedings shall be assigned by a random selection process as the judges from time to time direct.
(b) No person shall take any action designed to cause the assignment of any proceeding to a particular judge.

A violation of this rule, on these particular facts, normally would be of small moment, since the case would have been assigned to me ultimately.  However, the Assistant United States Attorney insisted that the deputy clerk file the removed civil case under the criminal case number _after_ the clerk told her that it was against the normal procedure of the clerk's office (a procedure that comports with our Local Rules).  The deputy clerk gave the Government every opportunity to have the removal papers filed as a new civil case, but the Government was insistent, explaining that a discovery matter was involved and that the civil case should be removed into the criminal case.  While the clerk recommended the proper procedure, she could not reject the filing.[60]  Perhaps the judges of this district should consider amending Local Rule 40.1 to make an exception for this particular situation.  Until that time, however, Local Rule 40.1 should be followed -- especially in view of this district's long-standing opposition to judge shopping.

---

[58]Doc. No. 368, _United States v. Todd_, No. 4:99-CR-00061-JMM (E.D. Ark. Dec. 29, 1999).

[59]_Todd_, 245 F.3d at 694.

[60]Federal Rule of Civil Procedure 5(d)(4).  "The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

Still, I will not consider the Assistant United States Attorney's insistence on the improper filing if I impose sanctions against the Government.

The Government makes the novel argument that, because it intervened, the civil action is now against the U.S. Government.[61]  This ignores what I thought was the obvious:  there is no federal officer or agent involved in the civil case; no federal statute is involved; no party was acting at the direction of a federal officer or agent; the Government had not been sued; there was no judicial power invoked against the Government; and Defendants were not seeking information from the Government.  The Government has cited no case law supporting the removal of a civil case based solely on the claimed enforcement of the Federal Rules of Criminal Procedure in a state court civil case; and I have yet to find any such case.

The Government's improper removal -- which it admits was an attempt to avoid legitimate discovery in a civil action -- may be admissible at the criminal trial under the rubric of "spoliation."  I would, however, have to be thoroughly briefed on this point.

I remain puzzled at the Government's angst at the prospect of legitimate discovery -- and at its extensive attempts to block it.  The Government's standard argument against expanded discovery in criminal cases is "danger to witnesses."  While this is obviously a legitimate concern in some cases, there is no suggestion of this in this "white collar" case.  Would the sky fall if the Government's key witnesses were required to answer questions under oath?

---

[61]This puts me in mind of the old saw about the man who killed his parents, then threw himself on the mercy of the court because he was an orphan.

I agree that § 1442(a)(1) should be broadly interpreted,[62] but this case was not properly removed under even an expansive reading of that statute.[63]   Accordingly, this case is REMANDED under 28 U.S.C. § 1447(c) to the Circuit Court of Pulaski County, Arkansas.

Rule 11 sanctions against the Government may be appropriate here.  If Defendants wish to file a Motion for Rule 11 sanctions against the Government in connection with the removal of this case, they must do so by 5:00 p.m., Friday, January 6, 2012.  The Government's response is due by 5:00 p.m., Friday, January 13, 2012.  The only issue to be addressed is the proper amount of monetary sanctions, if any.  Rearguing the factual and legal issues resolved by this order should be avoided.

## CONCLUSION

Defendants' Motion to Remand (Doc. No. 7) is GRANTED.  Defendant Garret Sorensen's Second Supplement to Rule 37 Motion (Doc. No. 22) is GRANTED as to costs and attorneys' fees against Mr. Solomon, but is otherwise DENIED.  Defendants may file a motion for Rule 11 sanctions against the Government.  All other pending motions are MOOT.

IT IS SO ORDERED this 13th day of December, 2011.


/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[62]See *Willingham v. Morgan*, 395 U.S. 402 (1969).

[63]See also *Angello v. St. Augustine Ctr., Inc*., No. 07-CV-27S, 2008 U.S. Dist. Lexis 7705 (W.D.N.Y. Feb. 1, 2008) (Government removal under 28 U.S.C. 1442(a)(1) improper where no judicial power invoked against Government).